[Civ. No. 22450.   Second Dist., Div. Three.   May 15, 1958.]

THE PEOPLE et al., Appellants, v. CITY OF LOS ANGELES, Respondent.

Walter N. Anderson, City Attorney (Manhattan Beach), Edwin I. Searle and Dryden, Harrington, Horgan & Swartz for Appellants.

Roger Arnebergh, City Attorney, Bourke Jones and John L. Flynn, Assistant City Attorneys, and Weldon L. Weber, Deputy City Attorney, for Respondent.

NOURSE, J. pro tem.*—This is an appeal from a judgment dismissing the subject action pursuant to the order of the superior court sustaining the general demurrer of the defendant city of Los Angeles to each of the six causes of action set forth in plaintiffs' amended complaint.

We have reached the conclusion that the judgment of the trial court must be affirmed as to the second cause of action and reversed as to the remaining causes of action.

In the first cause of action set forth in the amended complaint the plaintiffs seek by injunction to abate a nuisance created and alleged to exist by reason of the pollution of the waters of Santa Monica Bay through the discharge therein by the defendant city of Los Angeles of sewage and the consequent deposit thereof upon the lands of the city of Manhattan Beach both above and below the line of mean high tide.

By the second cause of action the plaintiffs acting through the city attorney of plaintiff city of Manhattan Beach seek to enforce a judgment entered against the city of Los Angeles which action was brought by the People through the attorney general of the state and in which action an injunction was issued against the city restraining it from the discharge of sewage of a defined character into the waters of Santa Monica Bay. In the third cause of action it is sought to abate the same nuisance alleged in the first cause of action, it being further alleged that the deposit of the sewage effluent upon the lands of the city of Manhattan Beach is in violation of an ordinance of that city. In the fourth cause of action the city of Hermosa Beach alone is plaintiff. It alleges facts which show the existence of a public nuisance created by the city of Los Angeles within the boundaries of Hermosa Beach, and facts purporting to set forth the basis for a judgment for damages against the defendant city. In the fifth cause of action the city of Manhattan Beach alone is plaintiff and what we have said as to the fourth cause of action is equally applicable to this one with the exception that the damages alleged are for damages to that city and its property rather than the property of Hermosa Beach. By the sixth cause

*Assigned by Chairman of Judicial Council.

of action the plaintiff cities of Hermosa Beach and Manhattan Beach seek an injunction to prevent defendant city of Los Angeles from doing certain acts which it is alleged would aggravate the nuisance created within the limits of each city, as described in the first, third and fourth causes of action.

. *The second cause of action.* This cause of action, asserted on behalf of the People of the State of California, seeks to restrain the city of Los Angeles from violating a judgment entered against the city, in an action brought by the attorney general of the state on behalf of the People of the state, and on behalf of the State Board of Health, the Division of Fish and Game and the State Park Commission, and entitled *People of the State of California* v. *City of Los Angeles.* The judgment sought to be enforced was entered on February 1, 1946, and on appeal by certain defendants therein was affirmed in February, 1948 (see *People* v. *City of Los Angeles,* 83 Cal. App.2d 627 [189 P.2d 489]).

The facts in the prior action and the scope of the injunction against the defendants therein are set forth in the opinion of a District Court of Appeal and it would not serve any purpose to repeat them here; reference being made to the opinion of Mr. Justice White in the case above cited.

. The present action is not prosecuted by the attorney general nor on behalf of any of the departments of the state on whose behalf the prior action was brought. To the contrary, the city attorney of Manhattan Beach and the plaintiff city of Manhattan Beach assert the right to enforce that judgment under the provisions of section 731 of the Code of Civil Procedure.

We are convinced that the city of Manhattan Beach could not authorize such action by its city attorney and that he is not authorized to bring an action to enforce the judgment in question. The only authority given to the city council of Manhattan Beach or to its city attorney by section 731 Code of Civil Procedure is to bring an action to abate a public nuisance existing within that city. No authority is given to sue upon a judgment to which the city is not a party.

The city of Manhattan Beach was not a party to the prior action. The prior action was prosecuted by the attorney general on behalf of the particular departments of the state heretofore mentioned pursuant to the provisions of section 12512 of the Government Code and he, and he alone had the power to direct the issuing of the process to carry that judgment into effect. (Gov. Code, § 12513.)

■ While undoubtedly the city of Manhattan Beach would benefit by the enforcement of the judgment in the prior action, so also would every other person adversely affected by a violation of the injunction granted therein and it cannot be thought that every person to whose advantage it would be to have the judgment enforced could bring an action upon that judgment or cite the defendant for contempt of it.

What we have just said makes it unnecessary to consider the contention of respondent that it is only by contempt proceedings that the question of violation of the injunction may be raised and that a separate action upon the judgment does not lie.[1]

*The first cause of action.* The facts alleged in the first cause of action, if true, disclose the existence of a public nuisance of the most serious character, endangering the health and comfort of the inhabitants of the plaintiff cities, created by the city of Los Angeles, and the respondent does not attack the sufficiency of the complaint to allege the existence of that nuisance. By its general demurrer the respondent attacked the first cause of action upon but two grounds; First, upon the ground that by the enactment of the Dickey Act (Stats. 1949, chap. 1549; now Wat. Code, §§ 13000-13064), the Legislature placed the entire control over public nuisances created by the pollution of the waters of the state in the State Water Pollution Control Board and the Regional Water Pollution Control Boards established by the act; and second, that the complaint failed to show that the plaintiffs had exhausted their administrative remedies under that act. The learned judge of the court below sustained the general demurrer to this cause of action upon the first ground above stated.

■ We are convinced that it was not the legislative intent to place in the State Water Pollution Control Board or in any of its regional boards the exclusive power to determine whether a nuisance exists and to abate a nuisance created by the pollution of waters of this state.

■ The regional control boards, among other things, are given power to prescribe requirements relative to any condition of pollution or nuisance created thereby, existing or threatened in the region in which they have jurisdiction (Wat. Code, § 13053) and any person proposing to discharge

---

[1] The question is not before us and we do not decide whether the judgment in the prior action is res judicata in the present action as to the questions there decided.

sewage within any region is required to file with the board of that region a report of such proposed discharge and upon the filing thereof it is made the duty of the board, after hearing, to prescribe "requirements as to the nature of such discharge with relation to the conditions existing from time to time in the disposal area or receiving waters." (Wat. Code, § 13054.)

■ When it appears to a regional board that a discharge of sewage is taking place contrary to the requirements prescribed by the board, the board is required to hold a hearing and serve notice thereof *upon the persons creating the condition*[2] (Wat. Code, § 13060) and after the hearing make findings as to whether pollution or nuisance exists and if it finds the existence of pollution or nuisance, to order its correction (Wat. Code, § 13062). ■ If the person ordered to correct the nuisance or pollution fails to comply with the order of the board *then,* and *only then it is the duty* of the regional board to certify the facts to the district attorney of the county in which the discharge of sewage originates and it is the duty of the district attorney to seek an injunction against the persons causing the pollution or nuisance (Wat. Code, § 13063). If a regional board fails to take appropriate action against an existing or threatened condition of pollution or nuisance it is the duty of the state board to take action (Wat. Code, § 13025).

■ As to the contamination of water, the only power given a regional board is to report the fact of contamination to the state board and to the appropriate local health officer (Wat. Code, § 13052, subd. (g)), and the only power given the state board as to contamination, is to direct any state agency having jurisdiction, to take action (Wat. Code, § 13025).

■ There is no provision in the act which requires any county, or municipality damaged by a public nuisance or the health of whose inhabitants is endangered by such a nuisance to institute any proceedings before either a regional board or the state board, nor is any provision made for them so to do. There is nothing in the act which expressly or impliedly places in the state board or any regional board the exclusive power to declare that a nuisance exists or to take action to abate a nuisance. To the contrary the power of any city or county to declare, prohibit or abate nuisances is expressly reserved to them by Water Code, section 13001. This section

---

[2] All italics herein are ours unless otherwise noted.

reads in part as follows: "No provision of this division or any ruling of the State Water Pollution Control Board or a regional water pollution control board is a limitation: . . . (b) On the *power of any city* or county to *declare, prohibit,* and *abate nuisances.*" This express reservation of the rights of the plaintiff cities to prosecute the subject action clearly negatives any intent to give the control boards the exclusive right to determine either what does or does not constitute a nuisance or to invoke the equity powers of the courts of this state to abate a public nuisance.

■ That it was not the intent of the Legislature to vest exclusive control of the pollution of waters and the abatement of a nuisance created by such pollution or by contamination of water, is further demonstrated by the fact that there is expressly reserved to municipalities and counties the right to adopt and enforce regulations imposing further conditions, restrictions or limitations with respect to the disposal of sewage or industrial waste which might result in the pollution or contamination of waters, and to any individual the right to prosecute an action against a private nuisance or for relief against contamination or pollution (Wat. Code, § 13001, subds. (a) and (d); Health & Saf. Code, § 5415, subds. (a) and (d)).

■ The right of a regional board to initiate an action pursuant to section 13063 of the Water Code, to enforce its orders relative to the pollution of the waters of the state or to abate a nuisance, as "nuisance" is defined by section 13005 of the Water Code, is not inconsistent with the right of plaintiff cities to prosecute this cause of action to abate a public nuisance, as such nuisance is defined in section 3479 of the Civil Code. (*Truck Owners & Shippers, Inc.* v. *Superior Court,* 194 Cal. 146 at 154-155 [228 P. 19]; *California Oregon Power Co.* v. *Superior Court,* 45 Cal.2d 858 at 869 [291 P.2d 455]; *Yolo Water etc. Co.* v. *Superior Court,* 43 Cal.App. 332 at 342 [185 P. 195].)

While in each of the cases just cited, the court was acting upon a petition for a writ of prohibition and thus had before it only the question of the jurisdiction of the superior court over the subject matter of the action, the present case presents the same question, for in reality it is the claim of the defendant city of Los Angeles here that it is only the State Control Board and the regional boards which have jurisdiction to determine whether pollution and nuisance exist, order their abatement and prosecute actions to enforce their orders. In

each of the cases cited it is held that the fact that the petitioner therein was subject to control by an administrative body and that that administrative body had the power to order the petitioner to desist from the acts which were complained of in the civil action and to enforce its orders by action in the courts, did not deprive the courts of the jurisdiction to enjoin at the suit of a municipality or private person those same acts.

Assuming *arguendo* that the control of pollution of the waters of the Santa Monica Bay, and nuisances as defined in section 13005 of the Water Code, created by such pollution, is vested in the Regional Control Board, that board does not have exclusive control over the conditions shown by the complaint to exist. The facts alleged in this count of the complaint to exist, show not only a pollution of the waters of the Santa Monica Bay, but the contamination thereof and the creation and existence of a condition constituting a public nuisance both in those waters and on the shore of the bay, detrimental to the health of the inhabitants of the plaintiff cities. In other words, the facts alleged show the existence of a public nuisance as a public nuisance is defined in sections 3479 and 3480 of the Civil Code.

While a regional control board may act in cases where there is a pollution of waters and a nuisance created thereby and consequently may act even though the pollution may also result in contamination, if contamination and public nuisance endangering the health of the inhabitants of any city or county exists, the statutes clearly place the power to control in other public agencies including the State Department of Health, local health officers, counties and municipalities.

By section 13005 Water Code, "nuisance" is defined as: " 'Nuisance' means damage to any community by odors or unsightliness resulting from unreasonable practices in the disposal of sewage or industrial wastes."[3] By section 13005, pollution is defined: " 'Pollution' means an impairment of the quality of the waters of the State by sewage or industrial waste to a degree which *does not create an actual hazard to*

---

[3]By section 3479 of the Civil Code a nuisance is defined as follows: " [Nuisance, what.] Anything which is injurious to *health*, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway is a nuisance."

*the public health* but which does adversely and unreasonably affect such waters for domestic, industrial, agricultural, navigational, recreational or other beneficial use, or which does adversely and unreasonably affect the ocean waters and bays of the State devoted to public recreation.'' Contamination is defined as: '' 'Contamination' means an impairment of the quality of the waters of the State by sewage or industrial waste to a degree which creates an *actual hazard to the public health* through poisoning or through the spread of disease. 'Contamination' shall include any equivalent effect resulting from the disposal of sewage or industrial waste, whether or not waters of the State are affected.''

As to contamination, the regional board's only power is to report it to the state board and to the local health authorities and the only power of the state board is to direct action by any state agency having jurisdiction. (Wat. Code, § 13052, subd. (g); § 13025.) The state agencies having jurisdiction are the State Department of Health and a local health officer, either of whom may order the contamination abated and may prosecute an action for an injunction in the proper superior court (Health & Saf. Code, § 5460), but neither is compelled to act but may accept the action taken by a county, a *municipality*, an officer or agency to abate the nuisance. (Health & Saf. Code, § 5414.)

Thus, it is clear that not only has the statute failed to give exclusive jurisdiction of public nuisances affecting health to the state board or the regional boards, but that a right to abate such nuisances is expressly given to others.

Respondent cites us a number of cases from outside this jurisdiction to the effect that tidal waters may be used for the disposal of sewage effluent, and that any damage caused thereby is *damnum absque injuria*.[4]

These cases are not applicable for in none of them is it held that if the right to dispose of sewage effluent in tidal waters creates a public nuisance, that nuisance may not be abated under the equity powers of the courts. In *Sanitation Dist.*

---

[4]*Lovejoy* v. *City of Norwalk*, 112 Conn. 199 [152 A. 210]; *Mayor etc. of City of Newark* v. *Sayre*, 60 N.J.Eq. 361 [45 A. 985, 83 Am.St.Rep. 629, 48 L.R.A. 722]; *Darling* v. *Newport News*, 249 U.S. 540 [39 S.Ct. 371, 63 L.Ed. 759]; *City of Hampton* v. *Watson*, 119 Va. 95 [89 S.E. 81, L.R.A. 1916F 189]; *Cityco Realty Co.* v. *Mayor, Counselor, and Aldermen*, 159 Md. 148 [150 A. 273, 277]; *Grey* ex rel. *Simmons* v. *Mayor, etc. of City of Paterson*, 60 N.J.Eq. 385 [45 A. 995]; *Du Pont Rayon Co.* v. *Richmond Industries*, 85 F.2d 981; *Attwood* v. *City of Bangor*, 85 Me. 583 [22 A. 466].

*No. 2* v. *Averill,* 8 Cal.App.2d 556-562 [47 P.2d 786], this court speaking through Mr. Justice Shinn stated: "The oceans and other navigable salt waters under state control may be used for public purposes as the state may see fit, and the owner of abutting lands must suffer without compensation such damage as his lands sustain *so long as the acts which are the cause of the damage do not constitute a nuisance."* [Emphasis added.] See cases cited in annotations to 40 A.L.R.2d 1182-1183.

Assuming that the state may authorize acts by the defendant city which would create a nuisance, the complaint here does not show that the state has so done and the fact, if it be a fact, that it might, does not make the complaint deficient. The fact that the defendant city has been authorized to dispose of its sewage in Santa Monica Bay does not show any authority to create a nuisance. (*People* v. *City of Reedley,* 66 Cal.App. 409 at 412 [226 P. 408].)

What we have just said, disposes of respondent's contention that the complaint fails to state a cause of action because it fails to allege that the plaintiffs exhausted the administrative remedies before the board under the Dickey Act, for if jurisdiction remains in the courts to determine the fact of the existence of a nuisance and order its abatement, the question of the exhaustion of the remedies before the board becomes irrelevant. (*California Oregon Power Co.* v. *Superior Court,* 45 Cal.2d 858 at 869 [291 P.2d 455].)

Further, the Dickey Act grants no remedy before the board to a county or city within whose boundaries a public nuisance exists by reason of the contamination of the waters or the deposit of contaminated substances upon the shores of those waters. It contains no provisions through which the city or county may institute proceedings before a regional board or the state board and it does not even require that a city in which a public nuisance exists by reason of the pollution by others, of waters within its boundaries, shall be made a party to any proceedings instituted by the board of its own motion. There were, therefore, no administrative remedies before the board available as a matter of law to the plaintiff cities.

*The third cause of action.* This cause of action incorporates all of the allegations of the first showing the existence of a public nuisance within the boundary of the city of Manhattan Beach and the responsibility of the defendant city of Los Angeles for the creation of that nuisance. It

further alleges the enactment of an ordinance by the city of Manhattan Beach which prohibits any person, including a municipal corporation, from causing ocean waters containing sewage and industrial waste or ''effluent of treated sewage,'' to flow on or upon the land of the city and which defines ''effluent of treated sewage'' by setting forth what such effluent may not contain. It is further alleged that the defendant city of Los Angeles has caused sewage effluent as defined in the ordinance, to flow upon the lands, tide lands, submerged lands, shores and water of the defendant city and will continue so to do unless restrained.

Respondent attacks this cause of action upon the grounds that by it, the city of Manhattan Beach seeks to give extra-territorial effect to its ordinance and therefore does not state a cause of action. This contention cannot be sustained.

The third cause of action, as does the first, states facts sufficient to constitute a cause of action in the plaintiff city of Manhattan Beach to abate a public nuisance and the allegations as to the ordinance in question are only allegations of additional facts showing the existence of that nuisance.

Undoubtedly the city of Manhattan Beach, under its police power, had a right to set up standards reasonably designed to safeguard the health of its inhabitants, and this right is not impaired but is affirmed by the provisions of the Dickey Act and the Health and Safety Code. (Health & Saf. Code, § 5415, Wat. Code, §13001, subd. (a).)

We are not here called upon to decide whether the ordinance, by its terms, purports to control the defendant city of Los Angeles in the manner or method of the disposal of sewage in the Santa Monica Bay outside the limits of the city of Manhattan Beach, for the ordinance clearly operates upon conditions caused to exist upon the lands of the city. The gravamen of this cause of action is the existence of a public nuisance within the city of Manhattan Beach and not that the city of Los Angeles is polluting and contaminating water in the Pacific ocean at a point outside of the limits of the city. The allegations of the complaint are that the acts of the city have resulted in the public nuisance by contaminating the water and the lands of the city. If this be proven, it matters not that the source of contamination was outside the city limits. (*People* v. *Selby Smelting & Lead Co.,* 163 Cal. 84 at 88 [124 P. 692, 1135 Ann.Cas. 1913E 1267].)

*The fourth and fifth causes of action.* By these causes of

508

action, the city of Hermosa Beach and the city of Manhattan Beach respectively reallege the same facts as to the existence of a public nuisance within their boundaries, as are alleged in the first cause of action, and the allegations of each are sufficient to support a judgment, as we have in our discussion of the first cause of action demonstrated, to abate that nuisance. In addition, to the allegations of the existence of nuisances, each of the cities alleges facts purporting to show the damage suffered by it, by reason of the creation and existence of the nuisance.

The defendant city of Los Angeles attacks each of these causes of action upon the theory that they are causes of action for damages not incidental to the action to abate the nuisance and that inasmuch as there is no allegation that any claim was filed against the city in accordance with the provisions of the Charter of the city of Los Angeles (Los Angeles City Charter, §§ 363 and 376), a cause of action is not stated.

Each of the cities has the right to abate a nuisance existing within its boundaries (Civ. Code, § 3494) and may by injunctive relief, accomplish such abatement (*People* v. *Selby Smelting & Lead Co.*, 163 Cal. 84 at 90 [124 P. 692, 1135 Ann.Cas. 1913E 1267]), and in any action brought to abate the nuisance, may not only enjoin its continuance, but recover damages. (Code Civ. Proc., § 731.) Inasmuch as each of these causes of action, although repetitious insofar as injunctive relief is concerned, is sufficient to state a cause of action for an injunction, it was error to sustain a general demurrer to either. We are not called upon to decide whether any of the facts alleged as constituting damage to the respective cities, do in fact show damages which are recoverable against the city, for this is a question to be decided upon a motion to strike from the pleadings, or upon objections to the evidence thereof when offered. We may say, however, that any proper item of damage which is a direct result of the creation of the nuisance and incident to any equitable relief that may be granted, may be recovered in this action even though no claim therefor was filed against the city prior to the institution of the action. (*Los Angeles Brick etc. Co.* v. *City of Los Angeles*, 60 Cal.App.2d 478 at 486 [141 P.2d 46]; *Ingram* v. *City of Gridley*, 100 Cal.App.2d 815 at 818 [224 P.2d 798].)

*The sixth cause of action.* The plaintiffs in this cause of action again reallege all of the facts as to the creation by the defendant city of Los Angeles of a public nuisance and

the present existence of that nuisance. They further allege that the defendant city of Los Angeles threatens to aggravate the existing nuisance by depositing in the waters of the Santa Monica Bay within the limits of the plaintiff cities, greatly increased amounts of untreated sewage which will contaminate the water within the boundaries of those cities and contaminate the beaches and lands of those cities and thus create an additional hazard to the health of the inhabitants of those cities. It is difficult to understand why counsel for the plaintiff has set forth these additional facts in a separate cause of action. All of them are properly a part of the allegations of the first cause of action, as there is but in fact one cause of action arising out of a single wrong, the public nuisance both existing and threatened. (*Wulfjen* v. *Dolton*, 24 Cal.2d 878 at 895-896 [151 P.2d 840].) However, the fact that this sixth cause of action is repetitious, does not effect its sufficiency standing alone to plead a cause of action. What we have just said is applicable to the third, fourth and fifth causes of action set forth in the complaint.

This cause of action is attacked by the defendant city upon the ground that thereby the plaintiffs seek to control the defendant city as to the manner in which it shall treat and dispose of its sewage. It is true that by the prayer of the complaint, plaintiff seeks a decree which, in addition to enjoining the defendant city from creating the public nuisance in question, also seeks to enjoin the city from the construction of additional sewage disposal facilities and which would in effect, prescribe the means the defendant city shall take in constructing its sewage disposal facilities and treating its sewage.

██ Undoubtedly the court could not, in the subject action, indicate or prescribe the means or facilities that the city should use in treating and disposing of its sewage, nor enjoin the city from entering into contracts for the construction of facilities for the treatment and disposal of its sewage. (*People* v. *City of Los Angeles*, 83 Cal.App.2d 627 [189 P.2d 489].) ██ On the other hand however, it may enjoin the defendant city from, through the use of its facilities, creating a public nuisance endangering the health and comfort of the inhabitants of the plaintiff cities, and where as alleged here, the defendant has by its past acts, invaded the rights of the plaintiffs by the creation of a nuisance and now actually threatens by further acts, to aggravate that nuisance, the plaintiffs need not await the

doing of the threatened acts, but may enjoin them. (*More v. Massini*, 32 Cal. 590 at 594; *Island Rec. Dist. No. 776 v. Floribel Alfalfa Syndicate*, 167 Cal. 467 at 471 [140 P. 4]; *Smith v. Wheeler*, 107 Cal.App.2d 451 at 455 [237 P.2d 325].)

The fact that by the prayer of the complaint, plaintiffs ask relief beyond the power of the court to award them, does not detract from the sufficiency of the complaint to state a cause of action, for we may not assume that the trial court will grant relief beyond that which it is authorized to give under its equity powers. The objection raised by the defendant to the sufficiency of this cause of action, goes to the scope of the relief which the court may give in the action, and not to the sufficiency of the complaint to state a cause of action for equitable relief within the power of the court to grant. (*California Oregon Power Co.* v. *Superior Court*, 45 Cal.2d 858 at 870 [291 P.2d 455].)

The judgment is affirmed insofar as it dismisses the second cause of action set forth in the complaint and is reversed insofar as it dismisses the first, third, fourth, fifth and sixth causes of action.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied June 10, 1958. Respondent's petition for a hearing by the Supreme Court was denied July 11, 1958. McComb, J., did not participate therein. Carter, J., and Traynor, J., were of the opinion that the petition should be granted.