**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**MARION MOTEL ASSOCIATES, d/b/a Park Inn International, Defendant.**

**Civ. No. SH–C–89–185.**

United States District Court,
W.D. North Carolina,
Shelby Division.

March 15, 1991.

efits, reinstatement of claimant Peterson, and attorneys fees. The Defendant denies any discrimination, alleging that the Plaintiff resigned her position freely and voluntarily and is not entitled to any relief in this action. Plaintiff's Title VII claims will be dismissed.

The Court heard these allegations of sex discrimination in the presence of a jury in Statesville, North Carolina, on August 27–31, 1990, along with Plaintiff's claims of age discrimination as to claimant Peterson and three other claimants. At the close of all evidence, Defendant moved for a directed verdict, pursuant to Fed.R.Civ.P. 50, as to Plaintiff's sex discrimination claim regarding Ms. Peterson. Finding that her sex discrimination claim for the period May to June, 1987, was not filed timely, the Court granted Defendant's motion for a directed verdict as to this portion of Ms. Peterson's claim. The Court allowed the issue of Defendant's alleged sex discrimination from December, 1987, to January, 1988, to be submitted to the jury for an advisory opinion. *Cox v. Babcock and Wilcox Co.*, 471 F.2d 13 (1972). The jury found that Defendant had neither failed nor refused to promote claimant Aileen Peterson on the basis of her sex during the period from December, 1987, to January, 1988.

The Court must make a final determination of whether Defendant failed or refused to promote claimant Peterson to the position of general manager during the period of December, 1987, to January, 1988, on the basis of her sex. *Id.* Upon full consideration of the pleadings, evidence, briefs, arguments, and the jury's verdict, the Court now enters its findings and conclusions.

Jenny S. Ainsworth, Ronald J. Arrington, Regan A. Miller, E.E.O.C., Charlotte, N.C., and Charles A. Shanor, Philip A. Skloner, Washington, D.C., for plaintiff.

Sam J. Ervin, IV, Byrd, Byrd, Ervin, Whisnant, McMahan & Ervin, P.A., Morganton, N.C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

RICHARD L. VOORHEES, Chief Judge.

### I. INTRODUCTION

This civil action was brought by the Plaintiff, Equal Employment Opportunity Commission, on behalf of claimant Aileen Peterson, a former employee of the Defendant, Marion Motel Associates, d/b/a Park Inn International. Plaintiff alleges sex discrimination by the Defendant during its employment of Ms. Peterson, in violation of Title VII of the Civil Rights Act of 1964, § 701, *et seq.*, 42 U.S.C. § 2000e, *et seq.* Plaintiff seeks damages, back pay and ben-

### II. FINDINGS OF FACT

1. The Court is given jurisdiction over this matter pursuant to Section 706(f) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

2. The Plaintiff, Equal Employment Opportunity Commission, brings this action on behalf of the claimant Aileen Peterson, an

adult female resident of McDowell County, North Carolina.

3. The Defendant, Marion Motel Associates, d/b/a Park Inn International, is a partnership duly organized and existing under the laws of the state of North Carolina with its principal place of business located in Marion, North Carolina.

4. The Defendant is an employer within the meaning of 42 U.S.C. § 2000e(b) and, at all relevant times to this action, employed more than fifteen individuals at its Marion, North Carolina, motel facility known as the Park Inn International.

5. The sex and age discrimination claims of claimant Peterson and the age discrimination claims of three other former employees of Defendant were tried in Statesville, North Carolina, on August 27 through 31, 1990.

6. In March, 1986, Gary F. Hewitt, acting through Defendant partnership, purchased a motel located in Marion, North Carolina.

7. Hewitt had no prior experience in motel operations and initially purchased the motel franchise for syndication purposes.

8. Unable to syndicate the motel successfully, Hewitt retained it as an investment.

9. Hewitt also owned and operated a construction company located in Virginia Beach, Virginia, known as Hewitt Home Remodeling.

10. Hewitt authorized Charles Duff, Comptroller of Hewitt Remodeling, and Doris White to operate and manage the daily business operations of the Park Inn.

11. White was employed as on-site general manager of the Park Inn.

12. On or about May 30, 1987, Doris White resigned her general manager position without notice.

13. Duff subsequently visited the motel for the purpose of hiring a replacement for White.

14. Claimant Peterson expressed her interest in becoming general manager to Duff.

15. Upon the recommendation of Duff, Hewitt hired Gary Hornaday, as the new on-site general manager of the Park Inn.

16. Upon the recommendation of Hornaday, Duff named claimant Peterson to assistant manager and authorized her an annual salary based upon the hourly rate of $5.00 per hour.

17. Hornaday suffered from Hodgkins disease when he was hired as the motel's on-site manager. He did not inform Duff that he had this disease. During the course of his employment, Hornaday's physical condition worsened, and he was absent frequently from work.

18. Claimant Peterson failed to inform Park Inn's management of the extent of Hornaday's absences.

19. Throughout Hornaday's employment, the motel operated at substantial losses and its general physical appearance deteriorated.

20. In December, 1987, Hewitt realized the motel's financial deterioration and traveled to Marion where he discovered that the motel had significant problems with personnel, employees' attitudes, and cleanliness.

21. Dissatisfied with Hornaday's management of the motel, Hewitt terminated Hornaday's employment, and decided to operate the motel himself in December, 1987.

22. After the termination of Hornaday's employment, Hewitt took claimant Peterson off salary, placed her back on hourly wages and required that she work forty hours per week.

23. Hewitt sought to upgrade the motel and solicited job applications to hire additional employees.

24. On January 28, 1988, Hewitt advised claimant Peterson that Mary Foster had been hired to be assistant manager of the motel.

25. Thinking that Foster had been hired as her replacement, claimant Peterson terminated her employment with the Defendant.

26. In April of 1988, Hewitt hired Randy Hartis as general manager of the Park Inn at an annual salary of $20,000.

27. On June 18, 1988, within 180 days of her January 28, 1988, conversation with Hewitt, claimant Peterson filed a charge of sex discrimination with the Plaintiff.

28. On April 14, 1989, Plaintiff issued a Letter of Determination to Defendant finding *inter alia* that Defendant denied claimant Peterson a promotion to the position of general manager on the basis of her sex.

29. The jury found that the Defendant had not committed sex discrimination in its employment of claimant Aileen Peterson during the period December, 1987, to January, 1988.

### III. CONCLUSIONS OF LAW

The Court has subject matter jurisdiction over this matter under 42 U.S.C. §§ 2000e–5(f)(1) and 2000e–5(f)(3). All procedural requirements of Title VII have been fulfilled. 42 U.S.C. § 2000e–5(f)(1).

 It is unlawful for an employer "to discriminate against any individual with respect to ... the terms, conditions, or privileges of employments, because of such individual's ... sex." 42 U.S.C. § 2000e–4(a). There is a three-step process for developing a Title VII claim. First, the plaintiff has the burden to establish a *prima facie* case of discrimination. Successful proof of such discrimination shifts the burden to the defendant-employer to articulate a legitimate, nondiscriminatory reason for its action against the employee. If the employer meets this burden, the plaintiff must then show that the purported legitimate reason is a mere pretext and, in fact, is a coverup for a discriminatory employment decision. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Claimant Peterson has alleged sex discrimination in that she was not promoted to general manager of the Park Inn in December, 1987.

To establish a *prima facie* case that claimant Peterson was not promoted to general manager in December, 1987, the evidence must show that (1) she belongs to a class protected by Title VII; (2) she was qualified for and applied or expressed her interest in the position of general manager; (3) despite her qualifications, Defendant failed to promote her to the position of general manager; and (4) Defendant filled the position of general manager with a male or continued to seek other applicants having the same or similar qualifications as claimant Peterson. *Id.*

As a female employee, claimant Peterson belongs to a class protected from employment discrimination as contemplated by Title VII. The Court found that claimant Peterson expressed interest in the position of general manager to Duff. Evidence presented at trial was inconclusive and contradictory as to claimant Peterson's qualifications to be general manager. Peterson's co-workers testified that she has performed managerial duties on many occasions. However, the Court also heard testimony that claimant Peterson was tardy in arriving at work on occasions, failed to alert Park Inn Management of Hornaday's absenteeism, and was reluctant to perform tasks over and above her regular job duties. The evidence was that Hewitt did not promote claimant Peterson to the position of general manager and, after her departure from employment, Hewitt hired Randy Hartis as general manager of the Park Inn.

Plaintiff has failed to show by a preponderance of the evidence that Ms. Peterson was qualified to be general manager of the Park Inn. Plaintiff's failure to satisfy the second prerequisite for a *prima facie* case precludes it from demonstrating a *prima facie* case for sex discrimination in employment against the Defendant. *Id.*

 Assuming, arguendo, that the Plaintiff did make out a *prima facie* case of sex discrimination, the Court has found that Hewitt assumed management of the Park Inn upon his discharge of Hornaday. To meet and refute a *prima facie* case, the defendant must "articulate a legitimate, nondiscriminatory reason" for its treatment of the claimant. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The Court has found that conditions deteriorated at the Park Inn during Hornaday's tenure as general manager. Hornaday's illness caused him to be absent from work on numerous occasions. As owner, Hewitt had every right to assume management of the Park Inn after the termination of Mr. Hornaday's employment. The Court finds that the Defendant articulated a legitimate, nondiscriminatory reason for not promoting claimant Peterson to the position of general manager in December, 1987. The Court further finds that the actions of Defendant in December, 1987, were not a pretext for sex discrimination against claimant Peterson. Indeed, claimant Peterson was not made general manager of the Park Inn in December 1987, because, as owner of the motel, Hewitt assumed the responsibilities of general manager and, therefore, no vacancy existed in that position. Thus, Plaintiff's claim that she was not promoted to general manager of the Park Inn in December 1987, on the basis of her sex, fails.

The Court concludes, as a matter of law, that the Plaintiff has failed to meet its burden of proving, by a preponderance of the evidence, that Aileen Peterson failed to be promoted to general manager or was fired as assistant manager of the Park Inn based on unlawful sex discrimination by the management of the Park Inn. The Court further concludes that Ms. Peterson was not wrongfully discharged by the Defendant on the basis of her sex and, thus, there has been no violation of Title VII of the Civil Rights Act of 1984.

The Judgment of the Court will be entered simultaneously herewith dismissing, on their merits, the claims of Aileen Peterson made pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*